(No. 3075—)

Steve Nemeth, Claimant, *vs.* State of Illinois, Respondent.

*Opinion filed May 10, 1938.*

George N. Blatt, Jr., for claimant.

Otto Kerner, Attorney General; Glenn A. Trevor, Assistant Attorney General, for respondent.

Mr. Justice Yantis delivered the opinion of the court:

Claimant herein is now and was at the time of the matters complained of, the owner of certain farm land in Will County, Illinois, as described in his complaint. According to the latter, the State of Illinois, in the month of September, 1930, constructed a two-lane concrete highway known as S. B. I. Route No. 7 in front of claimant's property. In his complaint he alleges that prior to such construction his property naturally drained across and under the then existing dirt and gravel roadway; that in order to provide for the drainage of claimant's property after the improvement, the State improperly constructed a culvert under the new highway and connected same with claimant's drainage tile; that the culvert was improperly constructed so that the lower or bottom level of same was several feet higher than that of the original culvert and of the natural drainage level; the result of such

alleged improper construction being to prevent the surface water flowing under the highway, and causing it to back up into the claimant's tiling system, thereby flooding his property. Claimant also alleges that in the construction of such highway, the respondent graded and filled in the right-of-way to the east and west of his property so that the natural watershed that previously ran to the east of the entrance to his home was changed from a northerly direction, and now for approximately one and one-half miles flows down upon claimant's property. Notwithstanding the foregoing charges of negligent construction, the complaint further alleges that prior to the year 1934 the ditches along such highway were in good repair and took care of the surface water, but that due to the neglect of the respondent these ditches were not maintained in good repair, were not cleaned at regular intervals, and that the surface water which drains through and over such ditch carried silt, dirt, rocks and debris to the culvert under such highway, causing the latter to be filled up to within six inches of the top and preventing the natural flow of water under such highway, thereby obstructing the flow of water from claimant's property and causing his tiling system to become obstructed. That by reason of the foregoing, fifteen (15) acres of his property was flooded during the years 1934-1935-1936, and that an additional ten (10) acres became untillable, and that fifteen hundred (1500) feet of twelve (12) inch tile, and one thousand (1000) feet of seven (7) inch tile, and eight hundred (800) feet of five (5) inch tile was cracked by freezing. Claimant asks damages for the cost of such tile, the labor necessary to replace same, and Five Hundred ($500.00) Dollars per year for the loss of production of crops on such acreage, all to a total damage of Two Thousand One Hundred Ninety One ($2,191.00) Dollars, for which he seeks an award.

The complaint was filed April 1, 1937, and the damages sought therein as appears from the foregoing are based, first —on improper construction work in the original building of the highway in 1930, and secondly—because of the alleged negligent maintenance by the State of the drainage along said highway in the years 1934-35-36. This improvement was originally known as S. B. I. Route No. 53, Construction Section 136, now known as S. B. I. Route No. 7. It appears from the testimony herein that claimant was very active in

obtaining the construction of this highway and freely gave a strip of two (2) feet of ground along the frontage of his property for the purpose of aiding in the building thereof, receiving nominal compensation of Twenty ($20.00) Dollars, only because respondent insisted on paying some consideration for the land. It appears that such construction was completed between 1931 and 1932, and from the testimony it would appear that more than five years elapsed from the time of the construction of the highway and the filing of the complaint on April 1, 1937. As to that portion of the complaint which is based upon improper or negligent construction of the culvert under the highway, the court must find that claimant's rights are barred by the Statutes of Limitations. If such were not the case however, the record would not support an award upon that portion of plaintiff's claim. In fact he negatives the merit thereof in his complaint itself, for in paragraph 5 of his complaint he states that from 1930 to 1934 the surface water was properly cared for by the drainage ditches, but that in the latter year, *due to the neglect of respondent to keep these ditches in good repair and to clean* same, etc. debris was carried into the culvert and the latter became filled up, thereby obstructing the natural flow of water from claimant's property and obstructing the tiling system existing on said land. The law is that, in arriving at the damage to property, such damage is determined by the difference between the fair cash market value of the property just prior to the time the making of the improvement commenced, and its fair cash market value just after the improvement is completed. (*Ross* vs. *City of Chicago,* 91 App. 416.) No evidence was introduced by which such difference in value, if any, could be determined in the present case. The evidence does disclose however (Claimant's Testimony Transcript p. 22) that prior to the building of the hard road the highway became muddy and bad and that "we needed the highway"; that before the concrete highway was constructed the water in flood time flowed across claimant's fields from his neighbor's field on the north, then through a water course around the back of his building across his fields and then south through a large culvert into the ditch along the highway, thus describing about a half circle around claimant's land; that since the construction of the concrete highway the water comes

straight east down through the culvert and into the south ditch, so that claimant's land which lies north of his buildings has been benefited by not having the water run over it (Tr. p. 29). It further appears that the road ditch on the north side of the pavement is larger than the old ditch which had become grown up in grass and weeds. Claimant further testified (Tr. p. 30) that shortly after the highway was constructed the fresh silt and clay that neither he nor the State Highway Department expected, washed into the ditch on the south side of the road such an amount that it clogged up the ditch, thereby holding back the water in the tiles, and clogging the culvert to within a foot of the top, and thus clogging the outlets to his tile. This culvert is at approximately the same location as the culvert that existed previous to the construction of the hard road. Claimant has not only failed to establish damages resulting from the construction of the pavement in question, but has established that certain benefits to the value of his land should have resulted therefrom.

The Attorney General contends that no damages, based upon any alleged negligence upon the part of the Highway Department in the maintenance of said highway, can be legally allowed to claimant. The testimony of claimant as to the neglect upon the part of the Highway Department to keep the silt and debris cleaned out of the culvert and ditch in question, stands uncontradicted by any other competent evidence. Claimant testified that if the silt was kept out of this large culvert and into the south ditch all of his troubles could be avoided; that at different times he applied to the Highway Department by letter and in person at the Elgin Office, requesting that they terrace the ditches, but that this was not done until three years after the highway was built, and that during this period the silt and dirt continued to wash out of the ditch and down into the water course; that the Highway Department cleaned out the culvert in 1934 and again in 1936 and that the road ditch to the west of the culvert has now been terraced. Claimant further testified that with the fill removed and the ditch and culvert cleaned out, he is able to get proper tile drainage, and that same is now working fine. (Tr. p. 47.) The testimony of claimant further shows the breaking of tile as complained of, but it shows that these tile became frozen and cracked during a recent winter when the temperature was 20° below zero, and that

such a freezing temperature had not been previously experienced since the time the tile were originally laid. Taken in all, the evidence is not conclusive that the damages suffered by claimant are due entirely to any negligence upon the part of the State Highway Department, but if such were true, the objection raised by the Attorney General to any award upon that ground would have to be sustained for the reason, as stated in the case of *Wentworth* vs. *State*, 9 C. C. R. 240.

"The State exercises a governmental function in the construction and maintenance of a public highway, and does not become liable for the negligence of its agents or employees in the maintenance thereof, in the absence of a statute specifically creating such liability."

The legislature of Illinois has not seen fit to pass any legislation creating a liability upon the part of the State covering the complaint as here presented, and the court is of the opinion that no award can be properly allowed.

An award is denied and the claim dismissed.